**COURT OF APPEALS DOCKET NO. 25-11817**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

---

**KENDALL HEALTHCARE GROUP, LTD., et. al.,**
Appellants (Defendants)

v.

**1199SEIU UNITED HEALTHCARE WORKERS EAST, FLORIDA
REGION,**
Appellees (Plaintiffs)

On Appeal from the United States District Court
For the Middle District of Florida (Tampa)
Civil Action No. 8:24-cv-02854-KKM-LSG

---

**APPELLANTS' BRIEF IN SUPPORT OF APPEAL**

---

Tracey K. Jaensch, B.C.S.
Florida Bar No. 907057
tjaensch@fordharrison.com
**FordHarrison LLP**
401 E. Jackson Street, Suite 2500
Tampa, FL 33602
T: (813) 261-7800
F: (813) 261-7899
*Counsel for Appellants/Defendants*
*Kendall Healthcare Group, Ltd, et al.*

## <u>CERTIFICATE OF INTERESTED PERSONS AND<br>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule 26.1-2 of the Eleventh Circuit Local Rules, the undersigned counsel for Appellants Kendall Healthcare Group, Ltd., *et al.*, submit the following complete list of the trial judges, all attorneys, persons, and associations of persons, firms, partnerships, and corporations that have an interest in the outcome of this case on appeal:

1. Tracey K. Jaensch, counsel of record for Appellants/Defendants Kendall Healthcare Group, Ltd., *et al.*

2. FordHarrison, LLP, counsel of record for Appellants/Defendants Kendall Healthcare Group, Ltd., *et al.*

3. Nicholas S. Andrews, counsel for Appellants/Defendants Kendall Healthcare Group, Ltd., *et al.*

4. Phillips, Richard, & Rind, P.A., counsel for Appellee/Plaintiff

5. Kathleen M. Phillips, counsel for Appellee/Plaintiff

6. Holly E. Olivia-Van Horsten, counsel for Appellee/Plaintiff

7. Central Florida Regional Hospital, Inc. d/b/a HCA Florida Lake Monroe Hospital, Appellant/Defendant

8. Columbia Hospital Corporation of South Broward d/b/a HCA Florida Westside Hospital, Appellant/Defendant

9. Fawcett Memorial Hospital, Inc. d/b/a HCA Florida Fawcett Hospital, Appellant/Defendant

10. Galen of Florida, Inc. d/b/a HCA Florida St. Petersburg Hospital, Appellant/Defendant

11. Galencare, Inc d/b/a HCA Florida Northside Hospital, Appellant/Defendant

12. HCA Health Services of Florida, Inc. d/b/a HCA Florida Blake Hospital, Appellant/Defendant

13. HCA Health Services of Florida, Inc. d/b/a HCA Florida Oak Hill Hospital, Appellant/Defendant

14. HCA Health Services of Florida, Inc. d/b/a HCA Florida St. Lucie Hospital, Appellant/Defendant

15. JFK Medical Center Limited Partnership d/b/a HCA Florida JFK North Hospital, Appellant/Defendant

16. Kendall Healthcare Group, LTD d/b/a HCA Florida Kendall Hospital, Appellant/Defendant

17. Largo Medical Center, Inc. d/b/a HCA Florida Largo Hospital, Appellant/Defendant

18. New Port Richey Hospital, Inc. d/b/a HCA Florida Trinity Hospital, Appellant/Defendant

19. Northwest Medical Center, Inc. d/b/a HCA Florida Northwest Hospital, Appellant/Defendant

20. Osceola Regional Hospital, Inc. d/b/a HCA Florida Osceola Hospital, Appellant/Defendant

21. Palms West Hospital Limited Partnership d/b/a Palms West Hospital, Appellant/Defendant

22. Sarasota Doctors Hospital, Inc. d/b/a HCA Florida Sarasota Doctors Hospital, Appellant/Defendant

23. University Hospital, LTD, d/b/a HCA Florida Woodmont Hospital, Appellant/Defendant

24. HCA Healthcare, Inc.

25. 1199SEIU United Healthcare Workers East, Florida Region, Appellee/Plaintiff

26. Mizelle, Honorable Kathryn Kimball., District Judge for the Middle District of Florida

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is requested. This case is procedurally complicated because it involves a separate but related case wherein the lower court's decision directly conflicts with 11th Circuit and Supreme Court precedent. Oral argument would help the panel understand the significance of its ruling on this case and on the related case.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND  CORPORATE DISCLOSURE STATEMENT .....................................................................1

STATEMENT REGARDING ORAL ARGUMENT................................................ i

TABLE OF CONTENTS ......................................................................... ii

TABLE OF AUTHORITIES...................................................................... iii

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF THE ISSUES ..............................................................2

STATEMENT OF THE CASE..................................................................3

   I.   Procedural History ....................................................................3

   II.  Statement of the Facts...............................................................7

      A.  The Collective Bargaining Agreements .....................................7

STANDARD OF REVIEW ......................................................................9

SUMMARY OF ARGUMENT................................................................10

ARGUMENT ...................................................................................12

   I.   The District Court Erred In Granting the Petition to Compel Arbitration Because the Union's Claim Is Not Arbitrable. ......................................12

      A.  Standard for Evaluating Arbitrability.......................................12

      B.  The Union's "Grievance" is Not a Grievance as Defined Under the CBAs, and the Hospitals Did Not Agree to Arbitrate the Union's Claims. ..................13

   II.  The District Court's Judgment Should Be Reversed and the Petition Dismissed Because the Union's Grievance Is Time-Barred and Deemed Withdrawn As A Consequence...............................................................19

   III.  The Grievance Is Not Subject to Arbitration Because the Union Waived Its Right to Arbitrate .............................................................................23

CONCLUSION .................................................................................27

CERTIFICATE OF COMPLIANCE ........................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alldread v. City of Grenada,*
  988 F.2d 1425 (5th Cir.1993)...................................................................22

*AT&T Technologies, Inc. v. Communications Workers of America,*
  475 U.S. 643 (1986)......................................................................... passim

*Bautista v. Star Cruises*,
  396 F.3d 1289 (11th Cir. 2005)..........................................................10

*Bazemore v. Jefferson Cap. Sys., LLC*,
  827 F.3d 1325 (11th Cir. 2016)..........................................................13

*Communications Workers of America v. Western Electric Co., Inc.,*
  751 F. 2d 203 (7th Cir. 1984)..............................................................17

*Davis v. White*,
  795 F. App'x 764 (11th Cir. 2020).....................................11, 23, 24, 25

*Ellinger v. United States*,
  470 F.3d 1325 (11th Cir. 2006)..........................................................22

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)............................................................................13

*Garcia v. Wachovia Corp.*,
  699 F.3d 1273 (11th Cir. 2012)....................................................11, 23

*Granite Rock Co. v. Int'l Brotherhood of Teamsters,*
  561 U.S. 287 (2010)................................................................... passim

*Herssein Law Grp. V. Reed Elsevier, Inc.,*
  594 Fed. Appx. 606 (11th Cir. 2005) ..................................................16

*Hipp v. Liberty Nat'l Life Ins. Co.,*
  252 F.3d 1208 (11th Cir. 2001) .....................................................21, 22

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002).........................................................................14, 16

*In re Checking Account Overdraft Litig.,*
  754 F.3d 1290 (11th Cir. 2014)......................................................10, 23

*Jim Walter Res., Inc. v. United Mine Workers of Am.*,
  663 F.3d 1322 (11th Cir. 2011) .............................................................5

*Kendall Healthcare Grp., Ltd. v. 1199SEIU, United Healthcare Workers E., Fla. Region,*

No. 8:24-CV-0785-KKM-CPT, 2024 WL 4957971 (M.D. Fla. Dec. 4, 2024) 5, 6, 18

*Klay v. All Defendants,*
   389 F.3d 1191 (11th Cir. 2004) ............................................................13

*Klay v. All Defendants,*
   398 F.3d 1191 (11th Cir. 2004) ............................................................10

*Lindo v. NCL (Bahamas), Ltd.,*
   652 F.3d 1257 (11th Cir. 2011) ...........................................................10

*Rink v. Comm'r,*
   47 F.3d 168 (6th Cir. 1995) .................................................................22

*S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.,*
   906 F.2d 1507 (11th Cir. 1990) ...........................................................23

*St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., Inc.,*
   969 F.2d 5859 (7th Cir. 1992 .............................................................24

*Stewart v. KHD Deutz of Am., Corp.,*
   980 F.2d 698 (11th Cir. 1993) .............................................................22

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,*
   363 U.S. 574, (1960) ...........................................................................12

*United Steelworkers of Am., AFL-CIO-CLC v. Cherokee Elec. Co-op.,*
   No. CIV.A. 86-AR-2163-M, 1987 WL 17056 (N.D. Ala. Feb. 19, 1987).....11, 19, 20, 23

*Vega v. T-Mobile USA,*
   564 F.3d 1256 (11th Cir. 2009) ...........................................................16

## Statutes

9 U.S.C. §16(a)(3) ....................................................................................1

## Rules

Fed. R. App. P. 32(a)(5) .........................................................................29
Fed. R. App. P. 32(a)(7)(B) .....................................................................29
Fed. R. App. P. 32(f) ...............................................................................29
Federal Rules of Appellate Procedure and Rule 26.1-2.............................1

## <u>JURISDICTIONAL STATEMENT</u>

This Court has jurisdiction under 9 U.S.C. §16(a)(3) of the Federal Arbitration Act ("FAA"). The FAA does not suspend the final-judgment rule. Section 16(a)(3) authorizes an immediate appeal from a "final decision with respect to an arbitration." 9 U.S.C. §16(a)(3)(2025). The District Court granted the Union's petition to compel arbitration and entered a final judgment. Doc 42, 43.

## **STATEMENT OF THE ISSUES**

1. Whether the District Court erred in finding that the Union's grievance was arbitrable?

2. Whether the District Court erred in failing to decide that the Union's grievance was untimely?

3. Whether the District Court erred in holding that the Union did not waive its right to arbitrate?

## STATEMENT OF THE CASE

### I.    Procedural History

Appellants are seventeen hospitals ("Hospitals") that are parties to separate collective bargaining agreements ("CBAs") with 1199 SEIU, United Healthcare Workers East, Florida Region (the "Union").  Doc 1-2[1].  The genesis of the underlying litigation is Article 46 of the CBAs, in which the Hospitals agreed to collect Union dues from employee payroll deductions so long as the Hospitals received properly authenticated dues deduction authorization forms signed by the employee.  Doc 1-2 – Pg. 83-84.  In exchange for the Hospitals agreement to deduct dues, the Union agreed in Section 5 of Article 46, to indemnify and hold harmless the Hospitals for claims arising out of the Hospitals' performance of Article 46.  *Id.*

In July 2021 a dispute arose under Article 46, Section 1, between the Hospitals and the Union concerning whether the Hospitals should process dues authorization forms that did not have an employee's authenticated signature.  Doc 1 – Pg. 12.   The Hospitals refused to do so and demanded properly authenticated signatures to deduct dues. *Id.* Thereafter, the Union filed unfair labor practice charges with the National Labor Relations Board against the Hospitals. *Id.*, at 13. In May 2023, the NLRB affirmed the dismissal of the Unions' ULP charges

---

[1] Citations to the District Court record shall be reference as ("Doc __ - Pg __").

against the Hospitals and deferred the Union's dispute to arbitration.  Doc 1 - Pg 12.  The Union did not pursue any of the ULPs in arbitration and the matter was closed in January 2024.

On January 30, 2024, having incurred attorneys' fees and costs in defeating the ULPs, the Hospitals formally demanded that the Union indemnify them pursuant to Article 46, Section 5 of the CBAs.  Doc 1 - Pg 12.  The Union rejected that demand and instead filed a grievance that claimed that the Hospitals' indemnification demand violated Article 46, Section 5. Doc 1 – Pg 13. The Union demanded arbitration after proceeding through the CBAs' grievance process. Doc 1 – Pg 14.

The Hospitals filed a two-count complaint with the United States District Court, M.D. Florida (Tampa Division) on March 29, 2024.  *Kendall Healthcare Group, LTD, et al. v. 1199 SEIU, United Healthcare Workers East,* U.S. District Court (M.D. Fla.) Case No. 8:24-cv-00785 (KKM-CPT).  The Hospitals' Count I alleged that the Union breached Article 46, Section 1 of the CBAs by refusing to provide signed and authenticated electronic dues authorization forms.  Count II alleged that the Union breached Article 46 Section 5 by refusing to indemnify the Hospitals for the damages incurred in defeating the Union's ULPs. *Id.*

The Union filed a motion to dismiss both counts on substantive grounds followed by a reply on substantive grounds to the Hospitals' response. *Id.*

4

On December 4, 2024, the District Court granted the Union's motion to dismiss Count I for failure to state a claim. As to Count II, the Court noted that the Union's motion to dismiss raised that it had filed grievances seeking to stop the Hospitals' indemnification claim.  The Court, held, therefore, that the matter was subject to arbitration and granted the Union's alternative motion to stay Count II. *Id.*  All proceedings relating to the Hospitals' indemnification claim were stayed pending arbitration.  *Kendall Healthcare Grp., Ltd. v. 1199SEIU, United Healthcare Workers E., Fla. Region,* No. 8:24-CV-0785-KKM-CPT, 2024 WL 4957971 (M.D. Fla. Dec. 4, 2024), *reconsideration denied,* No. 8:24-CV-0785-KKM-CPT, 2025 WL 524286 (M.D. Fla. Feb. 18, 2025) ("*Kendall I*")

The Court also denied the Hospitals motion for reconsideration of the Court's December 4, 2024 Order based on its conflict with this Court's precedent in *Jim Walter Res., Inc. v. United Mine Workers of Am.*, 663 F.3d 1322 (11th Cir. 2011)(holding that where a CBA contains a grievance and arbitration process that is entirely employee-centric (**like here**) and contains no agreement for the *employer's* claims against the union to be arbitrated, an employer cannot be compelled to arbitrate its claims under the CBA against the union).  2025 WL 524286 (M.D. Fla. Feb 18, 2025).

Although the District's Court stay in *Kendall I* is not currently before this Court, it will be affected by this Court's decision on appeal.  The CBAs clearly

provide that the Hospitals have contractual rights to indemnification under Article 46, but the District Court's decision in *Kendall I* stayed the Hospitals' ability to adjudicate those rights in a judicial forum. The Hospitals, however, did not agree to and have no contractual right to arbitrate their Article 46, Section 5 rights. Accordingly, if this Court reverses the District Court's judgment compelling arbitration, the Hospitals would to file a motion to lift the stay in *Kendall I* in accordance with this Court's decision that the dispute is not subject to arbitration.

After the District Court's decision in *Kendall I,* the Union filed a separate petition (the "Petition") with the District Court to compel arbitration of its grievances brought pursuant to Article 46, §5. Doc 1. The grievances alleged that the Hospitals "wrongfully seek indemnification for expenses and attorneys' fees incurred in defending against the Union's enforcement of dues deductions required under Article 46." Doc 1-3.[2]

The Hospitals sought dismissal of the Petition on several grounds: (1) the Union's "grievance" is not a grievance as defined under the CBAs and, accordingly, the Hospitals did not agree to arbitrate the Union's claims; (2) the Petition on its face showed that the grievances were untimely and void and the

---

[2] The Petition initially also sought to compel arbitration of the grievances' invocation of Article 24 of the CBAs prohibiting retaliation for members' union activity. Doc. 1-3. The Union later withdrew that portion of its Petition. Doc. 41 - Pg 1–2.

Hospitals did not agree to submit void grievances to arbitration; and (3) the Union waived its right to arbitrate by its actions in *Kendall I*. Doc. 38.

The District Court rejected the Hospital's first argument by ruling that the Union stated a grievance under Article 47 for which the CBA's arbitration provision applies.  Doc 42 - Pg 6-7.  The District Court also rejected the Hospitals' second argument finding that timeliness should be determined by an arbitrator. Doc 42 - Pg 7-8.  As to the third argument, the District Court determined that there was no waiver by the Union.  Doc 42 - Pg 9-11.

The Hospitals now appeal from the District Court's April 28, 2025 Order Granting the Union's Petition to Compel Arbitration [Doc 42] and Final Judgment dated April 29, 2025.  ("*Kendall II*") Doc 43.

## II.    <u>Statement of the Facts</u>

### A. The Collective Bargaining Agreements

Each of the Hospitals entered into collective bargaining agreements with the Union; each are identical in substance. Doc 1 – Pg 9-10. Each CBA contains a grievance and arbitration procedure in Article 14. Doc 1-2 - Pg 34-38. Article 14 entitled "Grievance and Arbitration" defines a "**grievance**" as follows:

**Section 2.  Definition of Grievance**

A "grievance" is defined as any complaint submitted in writing **by an Employee or the Union against the Hospital for breach of a specific provision of this Agreement**, **except as to those provisions which are not subject to this Article.**

7

A "class grievance" is defined as any complaint submitted in writing by two (2) or more Employees, or by the Union on behalf of two (2) or more Employees, against the Hospital and regarding the same breach of this Agreement or multiple breaches of the same provision(s) of this Agreement.

The Union (including SEIU Delegates) has the sole and exclusive right to pursue, withdraw, or resolve grievances at any step of the procedure.

Doc 1-2 - Pg 35.

Grievances" are subject to the "Grievance Procedure," Article 14, Section 3, a 3-step process in which the grievance is first presented informally and verbally to the Union members' supervisor or to Human Resources, then to the department head and finally to the CEO or designee before the "grievance" may be advanced by the Union or member to arbitration. Doc 1-2 – Pg 35-36. The time limits in the grievance procedure in the CBAs are "of the essence." Doc 1-2 – Pg 38. Article 14, Section 5. The CBAs provide that the Union or the employee has fourteen (14) days to file a formal grievance from the date of the breach of the provision of the CBA.  Doc 1-2 – Pg 35.  The express terms of the CBAs provide that if the Union fails to abide by the prescribed time limits, the "grievance" is deemed withdrawn. Doc 1-2 – Pg 38, Art. 14, Section 5.

After receiving a written demand for indemnification under Article 46, Section 5 from the Hospitals on January 30, 2024, the Union filed grievances dated March 15, 2024—a month and a half after the Hospitals made their written demand

8

for indemnification. Doc 1-3, 38-1.  The Union did not submit grievances against three of the Defendant Hospitals—Central Florida Regional Hospital, Inc. d/b/a HCA Florida Lake Monroe Hospital ("Lake Monroe"), Palms West Hospital Limited Partnership d/b/a Palms West Hospital ("Palms West"), and Columbia Hospital Corporation of South Broward d/b/a HCA Florida Westside Hospital ("Westside")—until December 2024—eleven months after the submission deadline had expired. Doc 38-2.

The Union's grievances allege that the Hospitals breached the Union Security Clause, Article 46, § 5, by seeking indemnity against the Union for damages. Doc 1-3, 38-2. The Indemnification agreement in Article 46, Section 5 provides:

### Section 5.  Indemnification

> *The Union agrees* to indemnify and hold the Hospital harmless against any and all liability, responsibility, claims, suits, debts, damages, demands, orders or judgments that may arise out of any action or omissions by the Hospital in accordance with the provisions of the Article in reliance upon the authorization mentioned in this Article. The Union assumes full responsibility for the disposition of monies so deducted once they have been turned over to the properly designated official of the Union.

Doc 1-2 - Pg 84. (emphasis added).

## STANDARD OF REVIEW

The District Court granted the Union's Petition to compel arbitration, entered judgment and closed the case.  Doc 42, 43.  It is well-settled that this Court

9

reviews *de novo* district court orders compelling arbitration. *See, e.g., In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1293 (11th Cir. 2014). *See also Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1275 (11th Cir. 2011); *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005).

## SUMMARY OF ARGUMENT

The District Court erred in granting the Union's Petition to Compel Arbitration rather than dismissing the Petition. It is well-settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 648 (1986). Under the plain terms of the CBAs, the Union cannot grieve an action or omission that the Hospitals never undertook under the CBAs. Where there is no agreement to submit an issue to arbitration, "a court cannot compel the parties to settle their dispute in an arbitral forum." *Klay v. All Defendants,* 398 F.3d 1191, 1200 (11th Cir. 2004). The policy reasons favoring arbitration in the labor context cannot be used "as a substitute for party agreement" and apply only after the Court is persuaded that the parties' arbitration agreement covers the dispute in question and is legally enforceable." *Granite Rock Co. v. Int'l Brotherhood of Teamsters,* 561 U.S. 287, 299 (2010).

Even assuming, *arguendo,* that the Union's claims were arbitrable (which they are not), the Hospitals never agreed to arbitrate untimely grievances; the CBAs expressly provide that untimely grievances are deemed withdrawn. The Eleventh Circuit has held under nearly identical facts that a district court may not compel a void grievance to arbitration. Here, the Court erred in compelling arbitration. *See United Steelworkers of Am., AFL-CIO-CLC v. Cherokee Elec. Co-op.*, No. CIV.A. 86-AR-2163-M, 1987 WL 17056, at *1 (N.D. Ala. Feb. 19, 1987), *aff'd sub nom. United Steelworkers v. Cherokee*, 829 F.2d 1131 (11th Cir. 1987) (refusing to compel arbitration where, as here, the grievances were untimely and deemed void under the collective bargaining agreement's grievance process).

Finally, the Court should have dismissed the Petition because the Union waived its right to arbitrate by virtue of its affirmative litigation conduct in *Kendall I. See Davis v. White*, 795 F. App'x 764, 768 (11th Cir. 2020) (citing *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2012).

## ARGUMENT

**I.**   **The District Court Erred In Granting the Petition to Compel Arbitration Because the Union's Claim Is Not Arbitrable.**

### A. Standard for Evaluating Arbitrability.

The U. S. Supreme Court has explained that arbitration is a matter of contract and a party cannot be compelled to submit to arbitration unless the party has agreed to arbitration as the forum for their dispute. *AT&T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643 (1986) (citing *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, (1960))("[W]hether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.'"); *Granite Rock Co.,* 561 U.S. 287, 299-300, *supra.*

In *AT&T Technologies, Inc.*, the Court held that when confronted with a motion to compel arbitration, a court must first determine whether the dispute is subject to arbitration. 475 U.S. at 644.  In reaching this conclusion, the Court summarized the "*Steelworkers Trilogy*" and extracted three principles. First, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* at 648. Second, "the question of arbitrability— whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *Id.* at 649. And third, "in deciding whether the parties have

12

agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.* Based on these principles, as discussed below, the District Court should have dismissed the Petition rather than compelling arbitration.

### B. The Union's "Grievance" is Not a Grievance as Defined Under the CBAs, and the Hospitals Did Not Agree to Arbitrate the Union's Claims.

The threshold question of whether an agreement to arbitrate exists at all is "simply a matter of contract." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995)). Under the plain terms of the CBAs, the Union cannot grieve an action or omission that the Hospitals never undertook under the CBA. While the Union may argue that this touches upon the merits of the underlying grievance, the Court must act as the gatekeeper in determining whether an issue is arbitrable, else the Hospitals will be required to submit to arbitration issues that it never agreed to. Where there is no agreement to submit an issue to arbitration, "a court cannot compel the parties to settle their dispute in an arbitral forum." *Klay v. All Defendants,* 389 F.3d 1191, 1200 (11th Cir. 2004).

The Supreme Court has reaffirmed the fundamental principle that "[a]rbitration is strictly a matter of consent ... and thus is a way to resolve those disputes - *but only those disputes* - that the parties have agreed to submit to arbitration." *Granite Rock*, 475

13

U.S. at 299 (citations and internal quotations omitted; emphasis in original). Applying this principle, the Court concluded, "[a] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Id.* at 297 (emphasis in original); *accord Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (noting the question of "whether a concededly binding arbitration clause applied to a particular type of controversy is presumptively for the court to decide"). Thus, "unless the parties clearly and unmistakably provide otherwise, it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate the grievances concerning a particular matter." *Id.* at 301.

As noted, *supra,* the decision in *Granite Rock* also expressly rejected the notion that the policy reasons favoring arbitration of labor disputes justify inferring an agreement to arbitrate arbitrability when there is a dispute about whether a particular dispute is arbitrable. *Granite Rock*, 561 U.S. at 299-300. The Supreme Court held as follows:

> Local nonetheless interprets some of our opinions to depart from this framework and to require arbitration of certain disputes, particularly labor disputes, based on policy grounds even where evidence of the parties' agreement to arbitrate the dispute in question is lacking... That is not a fair reading of the opinions, all of which compelled arbitration of a dispute only after the Court was persuaded that the parties' arbitration agreement was validly formed and that it covered the dispute in question and was legally enforceable.

*Granite Rock*, 561 U.S. at 300.

14

Accordingly, the policy reasons favoring arbitration in the labor context cannot be used "as a substitute for party agreement" and apply "only after the Court [is] persuaded that the parties' arbitration agreement [is] validly formed and that it cover[s] the dispute in question and [is] legally enforceable." *Id.* at 299. The CBAs here do not cover the dispute in question, as is clear from even a cursory reading of the alleged "grievance" and CBA Article 46, Section 5.  Doc 1-2 - Pg 84.  Article 14 of the CBAs explicitly defines a "grievance" as any complaint submitted in writing by an Employee or the Union against the Hospitals for breach of a *specific provision* of the CBA, except as to those provisions not subject to this Article. Doc 1-2 - Pg 35. Art. 14, Section 2 (defining grievance).  Thus, the Hospitals only agreed to arbitrate purported breaches of specific provisions of the CBAs that were subject to the grievance procedure. The Union's grievance alleges that the Hospitals violated Article 46, Section 5 by "wrongfully seeking indemnity" against the Union. Doc 1-3. But Section 5 imposes no obligation or duty on the Hospitals. Rather, Section 5 sets forth a unilateral obligation of the Union to indemnify and "hold the Hospitals harmless against any and all liability, responsibility, claims, suits", etc. arising out of any actions or omissions by the Hospitals made in accordance with Article 46. Doc 1-2 – Pg 84. Thus, the obligations set forth in Section 5 are unilateral and apply only to the Union. When determining whether an agreement to arbitrate a specific matter exists, general rules of

15

contract interpretation apply. To state a claim for a breach of contract, the Union must plead and establish: (1) the existence of a contract, (2) a material breach of that contract, and (3) damages resulting from the breach." *Vega v. T-Mobile USA,* 564 F.3d 1256, 1272 (11th Cir. 2009). Moreover, "a claim for breach of contract must identify the 'actual terms of the contract allegedly breached.'" *Herssein Law Grp. V. Reed Elsevier, Inc.,* 594 Fed. Appx. 606, 608 (11th Cir. 2005).

The Union cannot simply invent obligations under the CBA and then submit "grievances" to create obligations that do not exist in the CBA for the end-goal of compelling arbitration for its own sake. If that were the case, the Union could essentially levy any allegation against the Hospitals, no matter the substance, and it would have to be compelled to arbitration as long as the Union cited *some* provision of the CBA. Such an interpretation is inconsistent with the parties' express limitations on arbitrability contained in the CBA.

Regardless, the District Court erred by stating that the Hospitals were raising an argument that "put the cart before the horse" by making "an impermissible merits determination" that the Union's grievance is not arbitrable.  Doc 42 - Pg 6.   This is simply incorrect and cannot survive *de novo* review on appeal.  The Supreme Court has made clear that it is not an impermissible merits determination for the Court to interpret collective bargaining agreements in order to determine if the parties agreed to arbitrate a dispute or not.  *AT&T Technologies, Inc.,* 457 U. S. at

651; *Howsam,* 537 U.S. 79, 84. In the underlying case reviewed by the Supreme

Court in *AT&T Technologies, Inc.*, the union requested that the court compel

arbitration of an employee termination, which it said was barred by the contract's

layoff clause. 475 U.S. at 643. Management refused, claiming that the termination

was not a layoff, and that another contractual provision, the 'management

functions' clause, granted unrestricted rights to hire, fire, and assign workers which

removed the dispute from the coverage of the arbitration clause. 475 U.S. at 645;

*see also Communications Workers of America v. Western Electric Co., Inc.,* 751 F.

2d 203, 204, n.1 (7th Cir. 1984). Realizing that a decision on the arbitrability issue

required consideration of the contract's substantive terms, the lower appellate court

(the Seventh Circuit) had carved out a limited exception to the *Steelworkers*

*Trilogy* to avoid addressing the underlying merits. 751 F. 2d at 206. The Seventh

Circuit held that because the parties "had not clearly excluded the arbitrability

issue from arbitration, and deciding the issue would entangle the court in

interpretation of substantive provisions of the collective bargaining agreement and

thereby involve consideration of the merits of the dispute" the court was required

to compel arbitration of the arbitrability issue to the arbitrator. *Id.* The Supreme

Court unanimous reversed the Seventh Circuit and, after reciting the *Trilogy*

principles, declared it "evident" that the lower court had erred. 475 U.S. at 651.

The Supreme Court emphasized the contractual nature of arbitration over the

presumption of arbitrability, and carefully reiterated courts' "duty to interpret the agreement" even at the risk of involvement in the merits. *Id.* Indeed, here, the same District Court in *Kendall I,* had already interpreted Article 46, *Section 1* in dismissing Count I of the Hospitals' complaint by finding that the Hospitals' promise to withhold Union dues was unilateral and that the Union did not promise to do anything in Article 46 Section 1. *Kendall I,* 2024 WL 4957971 (M.D. Fla. Dec 4, 2024), D.E. 41 at pp. 5-7. Likewise, Article 46, Section 5 contains no promise by the Hospitals, and only a promise by the Union to indemnify and hold harmless any action taken by the Hospitals pursuant to Section 1. Because there could never be a breach by the Hospitals of Article 46, Section 5, the Union's grievances cannot be a "Grievance" as defined by the CBAs and the Court's ruling to the contrary was error. *AT&T Technologies, Inc.,* 475 U.S. at 648. This lack of agreement is a matter for judicial determination – not an arbitrator. *Id.* at 649. The lower court cites nothing in the CBAs even suggesting that the Hospitals agreed to arbitrate its indemnity rights under Article 46, Section 5. Accordingly for the reasons above, the Court should reverse the District Court's Order and dismiss the Petition because the Union's grievances are not arbitrable.

## II. The District Court's Judgment Should Be Reversed and the Petition Dismissed Because the Union's Grievance Is Time-Barred and Deemed Withdrawn As A Consequence

Even assuming, *arguendo*, that any of the claims were arbitrable (which they are not), the Hospitals still never agreed to arbitrate withdrawn grievances. The timeliness of the grievance is an issue properly decided by the Court because the express language of the CBAs provides that grievances not timely submitted are deemed withdrawn. In short, if the Hospitals are not obligated under the terms of the CBAs to arbitrate an untimely grievance, the Court must deny the petition to compel arbitration. The Eleventh Circuit has affirmed the same issue in *United Steelworkers of Am., AFL-CIO-CLC v. Cherokee Elec. Co-op.*, No. CIV.A. 86-AR-2163-M, 1987 WL 17056, at *1 (N.D. Ala. Feb. 19, 1987), *aff'd sub nom. United Steelworkers v. Cherokee*, 829 F.2d 1131 (11th Cir. 1987). There, the Steelworkers union petitioned to compel an untimely grievance to arbitration, despite that the collective bargaining agreement stated that "any grievance not reported within five (5) working days of first knowledge of the occurrence causing the grievance shall be deemed waived (sic) and non-existent." *Cherokee*, 1987 WL 17056 at *1. The Steelworkers union could not dispute the grievance's untimeliness, but instead argued that this was a procedural arbitrability issue that must be decided by the arbitrator. The *Cherokee* court rejected the union's position, holding that there was no "bona fide procedural timeliness question"—given that the union failed to

dispute the timeliness in its pleadings and other papers. *Id*. at *4. Because

*Cherokee* Electric did not agree to submit grievances which were untimely on their

face, the collective bargaining agreement expressly excluded such issues from

arbitration. *Id.* The *Cherokee* court reasoned as follows:

> To permit an arbitrator to arbitrate the issue of timeliness where
> there is no dispute over the facts bearing on the timeliness issue
> would be to waste the time of the arbitrator and of the parties, and
> if an arbitrator should erroneously find that this particular
> grievance was timely filed, the finding would be so manifestly
> arbitrary and capricious as to require a reviewing court to set it
> aside. Such a procedural quagmire can hardly comport with the
> rationale which favors arbitrability.

*Id.* at *5. Accordingly, the court denied the Steelworkers motion for summary

judgment on its action to compel the matter to arbitration. *Id.* The Eleventh Circuit

affirmed the district court's decision. 829 F.2d 1131.

Here, the Union has attached only one grievance to their petition. *See* Doc 1-

3. The grievance is dated March 15, 2024. *Id.* Per the Union's Petition to Compel

Arbitration, the Hospitals made their formal demand for indemnification on

January 30, 2024.  Doc 1 Pg 12 at ¶ 29. Pursuant to Article 14 of the CBAs, the

Union had fourteen (14) days from the January 30, 2024, demand for

indemnification, or until February 13, 2024, to initiate the formal grievance

procedure by submitting a grievance. Doc 1 Pg 35. The Union did not submit its

grievance until March 15, 2024—more than a month after the deadline had passed.

The CBAs further provide that "All the time limits set forth in both the grievance

and arbitration sections of [Article 14] are of the essence...if the Union or the grievant fail to advance a grievance to the next step within the applicable time limit, the grievance will be deemed to be withdrawn." Accordingly, the grievance at issue is deemed withdrawn pursuant to the CBAs. This applies equally to the grievances against the remaining sixteen (16) hospitals. *See* Doc 38-1, 2 (all submitted untimely).

The District Court, however, disregarded the above arguments based on the Union's assertion of the "continuous violations doctrine" and the Union's "interpretation of the step-based grievance review structure in the CBAs."  Doc 42 Pg 8.  Respectfully, the District Court is simply wrong.  First, for the "continuous violation doctrine" to apply there must be *a fortiori* a violation that is arbitrable. Here, as explained *supra,* the Union has not alleged (nor can it) that the Hospitals violated or breached Article 46 of the CBAs at any time – let alone before the Union served its time-barred grievances.  *See Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1222 (11th Cir. 2001).  Moreover, the Court was not permitted on a motion to dismiss to look outside the petition which alleged no "continuous violation" because there was nothing continuous happening or alleged to be ongoing—the grievance was triggered as alleged by the demand for indemnity. Further, the continuous violation doctrine is premised on the equitable notion that the applicable limitations period does not begin to run until facts supportive of the

cause of action "are or should be apparent to a reasonable prudent person similarly situated." *Id.,* at 1222 quoting *Alldread v. City of Grenada,* 988 F.2d 1425, 1432 (5th Cir.1993). Here, the Hospitals formally demanded indemnification on January 30, 2024. The Union is a sophisticated entity that is intimately familiar with the CBAs and its provisions and the CBAs make clear that its time limits are "of the essence." Doc 1-2 at Art. 14, Section 5.[3]

As for the District Court's reliance on the Union's interpretation of the grievance procedure: The Union's interpretation is irrelevant. Where, as here, the express time limits of Article 14 are unambiguous (and District Court did not hold otherwise) the Union's "interpretation" should not be considered. *Ellinger v. United States*, 470 F.3d 1325, 1338 (11th Cir. 2006) ("where the essential terms of a contract are unambiguous the court 'will not look beyond the four corners of the document to determine the parties' intent'" *quoting Rink v. Comm'r,* 47 F.3d 168, 171 (6th Cir. 1995). *See also Stewart v. KHD Deutz of Am., Corp.*, 980 F.2d 698, 702 (11th Cir. 1993). Moreover, as noted, the Court is entitled, indeed encouraged

---

[3] The District Court also suggests that Article 14, §4(E) instructs that the arbitrator should rule on timeliness. Doc 42 – Pg 8. The language of that section does not state that arbitrator **shall** or **must** rule on timeliness issues, but only that the "same arbitrator will be permitted to rule on" procedural arbitrability and the merits. Doc 1-2 – Pg 37. In other words, the language is permissive and does not bar this Court from performing its function of determining whether a void grievance is arbitrable. *Cherokee, supra.*

under *Cherokee,* to enter judgment denying arbitration where, as here, it would "waste the time of the arbitrator and of the parties." *Cherokee, id.,* at *5.

In short, the Hospitals never agreed to arbitrate void grievances, and the Court should therefore reverse the District Court's Order.

## III. The Grievance Is Not Subject to Arbitration Because the Union Waived Its Right to Arbitrate

There is no agreement to arbitrate here because any right to arbitrate has been waived. A party can, by its conduct, waive its right to arbitrate. *Davis v. White*, 795 F. Appx 764, 768 (11th Cir. 2020) (citing *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2012). Waiver occurs when, under the totality of the circumstances, "both: (1) the party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate; and (2) this participation results in prejudice to the opposing party." *Johnson v. Keybank Nat'l Ass'n (In re Checking Account Overdraft Litig.)*, 754 F.3d 1290, 1294 (11th Cir. 2014) (citations omitted). When evaluating prejudice, the expense incurred by the party opposing arbitration from participating in the litigation process may be considered. *S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990). "[T]he purpose of the waiver doctrine is to prevent litigants from abusing the judicial process." *Id.*

In *Davis v. White,* 795 Fed. Appx. 764 (11th Cir. 2020), the Eleventh Circuit decided under analogous circumstances that a sewer company had acted

inconsistently with its right to arbitrate and, therefore, waived the same. *Id.* at 768-769. The sewer company argued on appeal that its filing of a motion to dismiss for failure to state a claim was not inconsistent with its right to arbitrate. *Id.* at 769. The Eleventh Circuit disagreed, reasoning that motions to dismiss are only consistent with the right to arbitrate where they seek dismissal on non-merits grounds. *Id.* (citation omitted). But the sewer company's motion to dismiss for failure to state a claim, and arguments against amending the complaint, sought to resolve the parties' dispute on the merits. *Id.* (citing *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., Inc.*, 969 F.2d 585, 589 (7th Cir. 1992) ("Submitting a case to the district court for decision is not consistent with a desire to arbitrate. A party may not normally submit a claim for resolution in one forum and then, when it is disappointed with the result in that forum, seek another forum."). The sewer company's filing of its Rule 12(b)(6) motion was a "substantial invocation of the litigation process." *Id.* at 769-70 (citations omitted). [4]

There can be no argument from the Union that it *did not* seek the dismissal of the allegedly arbitrable issues here. Per the Court's Order on the Hospitals' Motion

---

[4] The District's Court's Order attempts to distinguish *Davis v. White, supra,* by noting that it had a more prolonged and complex litigation history.  Doc 42 - Pg 10-11.  This is not clear at all whether this is correct considering the record in this case, which speaks for itself.  In any event, the pertinent issue is not the litigation history, but the fact that the Union in prior litigation filed a dispositive motion under Rule 12(b)(6), which certainly constitutes a "substantial invocation of the litigation process." *Davis, id.,* at 769-70

for Reconsideration in Case No. 8:24-cv-00785-KKM-CPT (DE 56), the Court

found that the core issue was whether the Hospitals were entitled to seek first-party

indemnification from the Union. *Id.* at p. 4. But the Union tried to "have its cake

and eat it too", so to speak, by arguing, on one hand, that Count II of the Hospitals'

Complaint (regarding the Union's breach of the CBAs' indemnification provision)

was subject to arbitration, but then arguing at length that Count II should *be

dismissed for failure to state a claim. See* Union's Motion to Dismiss (D.E. 16 at

pp. 11-13) (Section D, titled "Count II is Subject to Dismissal for Failure to State a

Claim" and arguing the merits of the Hospitals' indemnity claim); Union's Reply in

Support of Motion to Dismiss (D.E. 25 at pp. 4-8) (Section B, arguing again the

merits of the Hospitals' indemnity claim). This was a direct, merits-based attack on

the core issue underlying the grievance, and is the same issue that the Union sought

to be decided in arbitration in its Petition. The Union's attack on the merits of the

Hospitals' purported first-party indemnity claim was inconsistent with their right to

arbitrate this issue, and caused the Hospitals to have to argue (extensively) the

merits of the claim in federal court, incurring significant attorneys' fees in the

process. *See Davis,* 795 Fed. Appx. 764 (sewer company's filing of motion to

dismiss and filing interlocutory appeal "slowed the process and magnified costs.").

Had the Court considered the Union's merits argument and ruled against the

Hospitals on Count II, ostensibly the Union would have accepted the results and

not filed this Petition. But because the Court did not dismiss Count II, the Union is attempting to re-litigate the issue in arbitration. The Union should not be permitted to do so.  In short, the District Court's decision compelling arbitration should be reversed.

## **CONCLUSION**

Under the U. S. Supreme Court's decisions in *AT&T Technologies* and *Granite Rock*, the Union's motion to compel arbitration should have been denied. The undisputed facts show that: (1) the Union's complaint is not, in fact, a "grievance" that the Hospitals agreed to arbitrate under the CBAs; (2) the grievances were deemed withdrawn due to their untimeliness; and (3) and the Union has acted inconsistent with its right to arbitrate the underlying claim for breach of CBA Article 46, thereby waiving same, by arguing the merits of the issue in its Rule 12(b)(6) motion in *Kendall I*.

For the foregoing reasons, the Hospitals respectfully request that the Court reverse the District Court's decision compelling arbitration and dismiss the Petition in its entirety.

Respectfully submitted,

**FORDHARRISON LLP**
By: _/s/ Tracey K. Jaensch_
Tracey K. Jaensch, B.C.S.
Florida Bar No. 907057
tjaensch@fordharrison.com
Nicholas S. Andrews
Florida Bar No.: 105699
nandrews@fordharrison.com
401 E. Jackson Street, Suite 2500
Tampa, FL 33602
Tel: 813-261-7800
Fax: 813-261-7899
**_Attorneys for the Hospitals_**

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B), as this brief contains 5,645 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f)

I also certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), as this brief has been prepared in a proportionally spaced typeface using Microsoft Work and Times New Roman 14-point font.

*/s/ Tracey K. Jaensch*
Attorney

29

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 29, 2025, a true and correct copy of the Appellant's Brief in Support of Appeal was electronically filed using the Court's CM/ECF system which will send an electronic copy to all counsel of record.

                                                    */s/ Tracey K. Jaensch*
                                                    Attorney